OPINION
{¶ 1} Appellant Veronica Thuener is the natural mother of Jessalyn Swisher (DOB 7-12-98) and Breanna Swisher (DOB 12-11-00). Jon Thuener is the natural father of the children.
 {¶ 2} Appellee Tuscarawas County Job and Family Services has had continuous involvement with the family since 1995. The involvement included Coshocton County Job and Family Services. Coshocton County worked with appellant concerning her two older children, Kaitlen and Brittany Luce. Coshocton County had concerns including lack of supervision, poor financial management, poor hygiene, and developmental delays of the children. Concerns of sexual abuse also arose during the investigation. No perpetrator was prosecuted, although Mr. Thuener was suspected. Eventually, the older children were surrendered to the custody of Coshocton County.
 {¶ 3} When Breanna was born, Coshocton County continued to have concerns surrounding her care. The family moved to Tuscarawas County, and a referral was made to appellee.
 {¶ 4} In February of 2002, both Jessalyn and Breanna were removed from a placement with their paternal grandmother, Valerie Swisher. Appellee also removed another minor grandson from the care of Ms. Swisher. The children were surrendered to the temporary custody of appellee, and have remained in the same foster home since their removal in 2002.
 {¶ 5} During the history of appellee's involvement with the family, Jon Thuener's participation in the case plan was minimal, due to repeated incarcerations, and non-compliance upon release. He has had no contact with the children since February of 2002.
 {¶ 6} During the history of appellee's involvement with appellant, and during the involvement of Job and Family Services in Coshocton County, appellant received a substantial amount of intervention. She historically had difficulty with supervision of the children, budgeting, maintaining housing, depression, and addressing medical issues with the children. There were noted developmental delays with the children. Appellant completed parent education programs, but was unable to internalize the information and apply it, due to intellectual limitations and problems with depression. She had maintained housing since May of 2002, and remained employed for three years, and appeared to be able to function on her own. However, due to concerns that she was unable to take care of the children at any time in the foreseeable future, appellee moved for permanent custody of the girls.
 {¶ 7} Following a hearing in the Tuscarawas County Common Pleas Court, Juvenile Division, the court found that the children could not be placed with either parent within a reasonable time, and granted permanent custody of Jessalyn and Breanna to appellee. Appellant assigns a single error on appeal:
 {¶ 8} "THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES; AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE GRANT OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN AND THAT THE CHILDREN COULD NOT OR SHOULD NOT BE PLACED WITH THE MOTHER WITHIN A REASONABLE PERIOD OF TIME; AND SAID DECISION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 9} Appellant argues that the court's finding that the children cannot be placed with her within a reasonable time is against the manifest weight of the evidence.
 {¶ 10} The court found that appellant had been provided with extensive services continuously since 1995, in both Coshocton and Tuscarawas Counties. The court concluded that although appellant appears to participate in her case plan to the best of her ability, she has made no lasting progress. She continued to demonstrate an inability to supervise, protect, or provide for her children. The court found that both depression and an IQ of 72 made it difficult for appellant to positively internalize information given to her, and the problems causing the removal of the children have not been alleviated.
 {¶ 11} Carrie Haddock, an employee of Personal and Family Counseling Services, testified that she began her involvement with the family approximately three years before appellee filed for permanent custody. Prior to the birth of Breanna, Ms. Haddock worked on parenting issues with appellant. Ms. Haddock indicated that she conducted a parent education program in appellant's home, centering on finances, housing, and developmental delays concerning Jessalyn. She testified that at that time, there were concerns about positive interaction between appellant and her child, and appellant was unable to sustain and follow through with recommendations concerning positive interaction. She also testified that the addition of Breanna in the home caused additional problems for appellant. She testified that she observed no measurable change in appellant's ability to appropriately parent the children. She further continued to have concerns about Jon Thuener, and the safety of the children in his presence.
 {¶ 12} Barb Hunter, an employee of Personal and Family Counseling, testified involving recent involvement with appellant. She testified that she provided parent education services to appellant, and observed a number of visits between appellant and her children. She testified that during visitation, appellant easily became distracted, and had difficulty interacting with the children. She testified that appellant had difficulty providing equal attention to the children during visitation, and that at the end of the one-hour visitation, both the children and appellant appeared ready to end the visit. Attempts to address the issues during visitation would result in a short-term implementation of suggestions; however, appellant would fall into her old patterns, resulting in the same concerns as before. In addition, Ms. Hunter was concerned that appellant had continuous contact with Jon Thuener.
 {¶ 13} Debra Whitney, a Family Service aide employed by appellee, testified regarding the provision of parent education services, and visits she supervised for appellant. She testified that she has supervised visitation between appellant and the children for approximately one year. She testified that her parent education sessions with appellant were terminated, after she had concerns regarding the lack of progress made by appellant, and questioned whether services might be more appropriately provided by another individual. Ms. Whitney expressed concern over appellant's inability to comprehend and relate information provided in the education sessions. Ms. Whitney testified that one-hour per week was the maximum amount of beneficial time for visitation between appellant and the girls. Appellant had difficulty relating to the children, and keeping them occupied for any period of time beyond an hour. She observed no significant increase in appellant's ability to parent the children over the years she had been involved with the family.
 {¶ 14} The guardian ad litem expressed concerns in her report concerning appellant's ability to care for the children. The guardian reported that while she did not doubt appellant's sincerity and desire to have her children with her, she was not capable of protecting the children from the people who continued to victimize appellant. Appellant lacked any type of support system, and unfortunately, surrounded herself with people who took advantage of her. The guardian believed that appellant had demonstrated an ability to function on her own, but was not capable of protecting and nurturing the children, nor did she have any appropriate relatives or friends to step in to help her in this task.
 {¶ 15} The court's finding that the children could not be placed with appellant within a reasonable time was not against the manifest weight of the evidence. The evidence reflected that despite on-going involvement with the family since 1995, and appellant's attempts to make use of programs available to her, appellant was unable to remedy the conditions that caused the children to be removed from the home in the first place.
 {¶ 16} The assignment of error is overruled.
 {¶ 17} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
By Gwin, P.J., Edwards, J., and Boggins, J., concur.